LAW OFFICES OF VICKI I. SARMIENTO
A Professional Corporation
VICKI I. SARMIENTO, SBN 134047
333 N. Garfield Avenue
Alhambra, California  91801
vsarmiento@vis-law.com
Telephone:  (626) 308-1171
Facsimile:   (626) 308-1101

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, SBN 144074
21800 Burbank Blvd., Suite 310
Woodland Hills, California 91367
dalekgalipo@yahoo.com
Telephone:  (818) 347-3333
Facsimile:   (818) 347-4118

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY CONTRERAS and JOSE LUA, SR., individually and as Administrators of the Estate of Richard A. Lua, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SAN JOSE; CHIEF ROBERT DAVIS; OFFICER ERIC BACHMANN; OFFICER PATRICK LYNCH, GENEVIEVE and DOES 1 to 10, <br><br> Defendants. | CASE NO.:  CV 10-00953 RMW <br><br> **PLAINTIFFS' TRIAL BRIEF** <br><br><br> **PRETRIAL CONFERENCE** <br> Date:   March 1, 2012 <br> Time:  2:00 p.m. <br> Ctrm:  "6" <br><br> **TRIAL** <br> Date:   March 19, 2012 <br> Time:  1:30 p.m. <br> Ctrm:  "6" |

1.  **<u>Factual Summary</u>**

This is a civil rights case for the death of Richard A. Lua by San Jose police officers Eric Bachmann and Patrick Lynch on February 11, 2009.  The plaintiffs in this case are the Estate of Richard Lua and Mr. Lua's parents, Emily Contreras and Jose Lua, Sr..[1]  Emily Contreras and Jose Lua, Sr. have been appointed administrators and representatives of decedent's estate by the Superior Court in Santa Clara County.  In this representative capacity, Plaintiffs have standing to assert all state claims and decedent's Fourth and Fourteenth Amendment claims.

The following is a summary of Plaintiffs' remaining claims:

1)  Fourth Amendment claims for unreasonable detention and excessive force;
2)  Fourteenth Amendment claim for interference with familial relationship;
3)  *Monell* claim based on a failure to train
4)  Ratification by Chief Robert Davis or his delegate based on a failure to train
5)  Wrongful Death (C.C.P. 377.60
6)  Survival Claim
7)  Violation of Civil Code Section 52.1 (Bane Act)
8)  Battery
9)  Negligence

At the time of his death, Richard Lua was 28 year-old.  He died following 110 seconds of tasering by Officer Bachman and over 55 baton strikes throughout his body inflicted by Officers Bachmann and Lynch.

///

---

[1] Decedent has a biological daughter who was joined as a defendant in this case under compulsory joinder of all heirs in a wrongful death action.  The parties have agreed that decedent's daughter will not be discussed by any witness in this case.

PLAINTIFFS' TRIAL BRIEF                    Case No.: CV 10-00953 RMW

**A.  The Stop and Foot Pursuit**

On February 11, 2009, Mr. Lua was lawfully walking on a public street on Story Road, in San Jose California when Officers Bachman and Lynch decided, for unclear reasons, to make a "consensual stop" of Mr. Lua.  The officers' explanation for the stop was due to the "high crime" area that Mr. Lua was walking through.  There is no dispute that Mr. Lua had *not* committed any crime, did not match the description of any wanted subject known to either officer, and was not acting in any manner to lead them to believe that he was involved in a crime.  The officers testified that Mr. Lua began to run when he noticed their patrol unit turn.

The officers went on a foot pursuit of Mr. Lua which ended in the rear yard of a home located at 2227 Amador Drive.  Under the officers' version of events, Mr. Lua refused to stop when ordered to do so.  The officers testified that the first baton strikes occurred by the gate of this residence to prevent Mr. Lua from fleeing, and because he allegedly took a combative stance.  Plaintiffs contend that the defendant-officers lacked reasonable suspicion to detain Mr. Lua.  Even assuming reasonable suspicion could be established, the officers lacked probable cause to arrest Mr. Lua.

**B. The Baton Strikes**

Based on the Medical Examiner Michelle Jorden's autopsy report and deposition, it is undisputed that Mr. Lua was struck numerous times about his body with batons.  The autopsy report confirms that Mr. Lua's body sustained over 55 blows

3

from the head to the lower extremities which caused various levels of bruising and abrasions.  Mr. Lua was also struck in the head with a baton.   Although the Medical Examiner Jorden did not attribute the baton strikes and other blunt force trauma as a contributing cause of death, the extensive number of baton strikes, including the blow to Mr. Lua's head are relevant to decedent's survival damages.   This evidence is also relevant on the whether the officers were adequately trained in restraint techniques, and the proper use of a baton.   Deliberate blows to the head are identified by POST standards as potentially lethal and officers are trained that such blows are only justified if the officer is facing a lethal threat and there are no other reasonable alternatives.

### C.  The Taser Use and Taser Download

The taser download confirms that Officer Bachman deployed his taser against Mr. Lua for at least 110 seconds, most of which occurred while Mr. Lua was on the ground.  Officers Bachmann and Lynch failed to follow their own department protocol which recommends that officers apply the taser weapon in short five (5) second bursts. After each cycle it is recommended that the officer "weigh the circumstances involved to determine whether additional taser discharges would be safe and effective at gaining control of the subject, or whether other force options should be considered" (San Jose Police Department Training Bulletin 12/1/05).   In deposition, Officer Bachmann has stated that he cycled his taser no more than two times.  The taser download documents

that Officer Bachmann used his taser against Mr. Lua in the following consecutive

chronology.  It should be noted that the download records the end time of the taser:

      1.  22:22:37   (35 seconds)
      2.  22:22:56   (20 seconds)
      3.  22:23:14   (15 seconds)
      4.  22:23:24   (10 seconds)
      5.  22:23:42   (10 seconds)
      6.  22:23:48   (5 seconds)
      7.  22:23:54   (5 seconds)
      8.  22:24:02   (5 seconds)
      9.  22:24:12   (5 seconds)

      The defendant-officers were trained to use the time between taser cycles as a

"window of opportunity" to take a subject into custody by use of physical restraint

techniques.  Here, even under the defendants' version of the events, the officers failed

to make any attempt to secure Mr. Lua in any way during the time intervals between

cycling of the taser weapon.  Officer Bachmann cycled the taser for a total of 110

seconds leaving no opportunity for Mr. Lua to comply in any way to any alleged verbal

command.

**D.  Taser Warnings**

      It is also significant that the taser was used to Mr. Lua's face and chest.  At the

time of this incident, SJPD had a policy that officers avoid application of the taser in

the head area.  In addition, SJPD Training Bulletin 9/19/05 states that the improper use

of a taser device can lead to a greater number of taser cycles administered which may

have "negative health implications to the subject".

A Taser International manufacturer's bulletin dated June 28, 2005—which

defendants were on notice of, states as follows:

> - failure to begin restraint procedures during a taser device application can
> unnecessarily prolong the duration or number of taser device applications
> administered to a given subject.
>
> - repeated, prolonged, or continuous exposures to the taser electrical discharge
> may cause strong muscle contractions that may impair breathing and respiration,
> particularly when the probes are placed across the chest. Users should avoid
> repeated, prolonged, or continuous exposures to the taser electrical discharge in
> order to minimize the potential for over-exertion of the subject or potential
> impairment of full ability to breathe.
>
> - the user must always focus on the taser device induced impairment as a
> window of opportunity during which physical restraint procedures should be
> initiated.

The defendant-officers have testified that they believed Mr. Lua was under the

influence of a narcotic. There were warnings on the date of the incident regarding

taser use against individuals believed to be under the influence of narcotics.

Specifically, a 2005 Taser International Bulletin warns that where a subject is under

the influence, a taser should be combined with physical restraint techniques to

minimize the total duration of the struggle and to minimize the total duration of taser

use because of increased significant risk for death from further prolonged exertion

and/or impaired breathing.

///

///

PLAINTIFFS' TRIAL BRIEF                                    Case No.: CV 10-00953 RMW

**E.  Cause of Death**

Medical assistance was not rendered to Mr. Lua until other officers arrived on the scene—minutes after the last taser application by Officer Bachmann.  Neither Officer Bachmann nor Officer Lynch performed CPR on Mr. Lua.  By the time other officers arrived on the scene Mr. Lua was noted to be unresponsive and not breathing. Paramedics pronounced Mr. Lua dead at the scene.

Plaintiffs will offer expert medical opinion testimony that Mr. Lua was a high risk individual for the use of a taser device.   Plaintiff's expert, Dr. Barry Gustin, opines that a person who is under the influence of a stimulating sympathomimetic drug and is in an over-exerted state from the physical struggle with the officers is at high risk of serious injury or death by a prolonged use of a taser.   Dr. Gustin opines that the application of a 110 seconds continuous electrical discharge from the taser device in this context led to a cardiac arrhythmia and Mr. Lua's death.  His cardiopulmonary arrest was concomitant to prolonged electrical exposure.   Dr. Gustin opines that Mr. Lua received that amount of electrical energy sufficient enough to produce a lethal dysrhythmia, since continuous and prolonged electrical stimulation from a taser device can be expected to have a direct deleterious effect on the heart, independent of other physiologic alterations caused by the taser electrical current.

Medical Examiner Michelle Jorden has testified that the taser would be a contributing cause of death if Mr. Lua became unresponsive during or shortly after a

7

taser deployment.   The chronology of events establish that Mr. Lua became

unresponsive during or shortly after the taser deployment.

**2. <u>Issues of Law</u>**

1)  Whether there was reasonable suspicion to detain Mr. Lua.   "Reasonable

suspicion" is an objective standard based on factors present at the time of the detention.

*See Terry v. Ohio*, 392 U.S. 1, 23-27 (1968).

2)  Whether there was probable cause to arrest Mr. Lua.  Probable cause must be

present at the time of the arrest.    See, e.g., *Beck v. Ohio*, 379 U.S. 89, 91 (1964)

("Whether [an] arrest was constitutionally valid depends . . . upon whether, at the

moment the arrest was made, the officers had probable cause to make it."); *Borunda v.*

*Richman*, 885 F.2d 1384, 1391 (9th Cir. 1988) ("[A]n arrest without probable cause

violates the Fourth Amendment and gives rise to a claim for damages under § 1983.").

3)  Whether Mr. Lua's rights against the use of excessive force under the Fourth

Amendment were violated.   With respect to the excessive force claim, the applicable

standard is "objective reasonableness" under the circumstances.  See, *Graham v.*

*Connor*, 490 U.S. 386.

4)  Whether decedent can recover survival damages for the pain and suffering he

endured up to the time of his death.  See, *Guyton v. Phillips*, 532 F. Supp. 1154 (N.D.

Cal. 1981), (holding [t]he decedent's loss of life, which is the deprivation here, is a

compensable injury that survives and is recoverable by his estate.  *See also Roman*,

570 F. Supp. at 1557; *Williams v. County of Oakland*, 915 F. Supp. 1074, 1078 (N.D. Cal. 1996) (holding that California state law that excludes damages for pain and suffering "is inconsistent with the purposes of section 1983 of the federal civil rights statutes"); *Garcia v. Whitehead*, 961 F. Supp. 230, 233 (C.D. Cal. 1997) ("California's survivorship statute is inconsistent with the purposes of section 1983 because it excludes damages for pain and suffering of the decedent."); *T.D.W. v. Riverside County*, 2009 WL 2252072, at *7 (C.D. Cal. July 27, 2009) (concluding that "excluding damages of decedent's pain and suffering and loss of enjoyment of life would be inconsistent with the purposes of section 1983")

5) Standing—In the preparation of the the Pretrial Conference Statement, Defendants recently raised "standing" as an issue in this case.   Plaintiffs dispute that this is an issue because Defendants have been on notice as of the filing of the first amended complaint that Plaintiffs were bringing decedent's Fourth Amendment claims in their representative capacity and their Fourteenth Amendment claim for interference with familial relationship in their individual capacity.   As to Plaintiffs' state law claims for negligence, battery and violation of Civil Code Section 52.1 (Bane Act), California Code of Civil Procedure Section 377.60 makes clear that "a cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's *personal representative* on their behalf…"  (*emphasis added*)

Plaintiff's first amendment complaint at page 2, under "Parties" sets forth as follows:

"Plaintiffs, EMILY CONTRERAS and JOSE LUA, SR., are the administrators of decedent RICHARD ANTHONY LUA'S estate and decedent's parents.  EMILY CONTRERAS and JOSE LUA, SR. bring this action in their individual capacity and as successors in interest to the decedent, and in their capacity as personal representatives of decedent's estate."

In addition, decedent was providing Plaintiff Emily Contreras with support for necessities of life (i.e., groceries) at the time of his death.   Ms. Contreras testified to this support at her deposition.  Thus, financial dependency is a separate ground for establishing "standing".

Consequently, the recent "standing" issue raised by Defendants is unavailing.


DATED:  February 15, 2012          **LAW OFFICES OF VICKI I. SARMIENTO**
                                   **LAW OFFICES OF DALE K. GALIPO**



                                   By:  */s/ Vicki I. Sarmiento*
                                        VICKI I. SARMIENTO
                                        Attorney for Plaintiffs

PLAINTIFFS' TRIAL BRIEF                              Case No.: CV 10-00953 RMW